Case No. 25, Judge 7097, Yukos Capital Limited, formerly known as Yukos Capital, S-A-R-L, v. Russian Federation, Appellant. Mr. Marks for the Appellant and Mr. Rosen for the Judge. Your Honor, when I'm done, I'd like to introduce the attorneys here who've never been in this court. Their names are long, so after I use up my time. If you're ready to proceed, Mr. Marks, please proceed. Yes, Your Honor, my name is Bruce Marks. I'm counsel for the Russian is inconsistent with Russian law under ECT Article 45-1 as jurisdictional. The district court accepted Russia's position that Article 45-1 applies article by article, but rejected its position that arbitration is inconsistent with Russian law with literally no analysis. The entire Russian law opinion in a $5 billion case is four sentences. The only Russian law cited in that opinion was Article APC, Arbitrage Procedural Code Article 198-3, which for some reason the court pulled from the internet. It didn't use the certified translation submitted by the parties. The court did not discuss Russia's constitution, other relevant statutes, Russia's expert evidence, legislative history, or a single Russian Supreme Court, Russian Arbitrage Supreme Court, or Russian Constitutional Court case that we submitted. In each of these courts are apex courts whose interpretation of Russian law would be binding on this court under the Hilton animal science doctrine, and only one of those cases was contested by the other side. Russia's evidence of Russian law establishes arbitration is not inconsistent with but precluded by Russian law under the unratified ECT. This requires reversal and remand, and this court has remanded in other cases on issues of foreign law in order for the district court to properly analyze both sides' evidence unless this court wishes to decide Russian law in the first instance. And I'm prepared for that, and I will begin my argument on that. Our briefing established Russian law precludes arbitration of public law expropriation claims unless authorized by a statute. This is established by Constitution Articles 46-2 and 47-1. They're in the addendum, and they require these claims, public law claims, to be filed in Russian courts, quote, whose jurisdiction is determined by statute. APC Article 198-3, which is a statute, mandates jurisdiction for these claims in the arbitrage courts unless jurisdiction of other courts is provided by statutes. And the Supreme Arbitrage Court, an apex court, held twice in 2014 that public law disputes may not be arbitrated unless authorized by statute, and actually vacated two awards. This is a JA2409 at sequence and JA2399 at sequence. Further, the Supreme Court plenum held in 1995 and 2003 that under Russian Constitution Article 15-4, international treaties to provide, quote, rules other than those envisioned by law, end quote, must be ratified, quote, in the form of a federal statute. That's two, Resolution Number 8 and also Resolution Number 5, JA2424 and JA2426. In 2009, the Russian Supreme Court reversed application of an unratified treaty which contradicted a statute in the China border case. That's at JA2428. This law, which the district court did not even consider, clearly established that arbitration to pursuant to the unratified ECT is not just inconsistent with Russian law, but precluded by it. So this court clearly has to reverse the district court's decision, essentially relying on nothing, and either remand or I'm happy then to argue the relevant Russian law first. There's, I'm sorry. Your primary position is that we just simply remand this for the district court to consider either issue preclusion or determining Russian law itself? Your Honor, our absolute position in the brief has been as most recently by the Rule J letters is that issue preclusion should be remanded for the same reasons that this court did in Hawley. And there was a recent decision by this court, I believe related to India, where it also remanded issue preclusion. We know that GOJ has now weighed in with their opinion. We didn't, we're kind of brief it this week, right? Judge Howe in the Hawley case is diligently at work, has requested the parties, has dug in with what this court directed in the appeal order. The parties are in the process of briefing it. And if this case is remanded, we would expect Judge Nichols to do the same. And yes, Your Honor, there's one issue that I'll, there's a number of issues that I can attack Resolution 8P. That's the only thing that they hold their hat on, that we don't think that their interpretation is wrong, because we know that there's never been a case in Russia. Wait, you don't think their interpretation is? Their interpretation is wrong. You do think? Yes. You think it's wrong. Got it. Yes. Yes, we do. Very wrong for a lot of, for a lot of reasons. On the issue of remand, Judge Wilkins, I think this, the issue of foreign law cries for remand. I know each of the members of this panel would love to deal with Russian law in the first instance, but the fact that, but the fact of the matter is there's a, there's a Second Circuit, Kate Bugliotti, where it talks about how the, even though it's a, much of Russian law is a 44.1 issue. Nonetheless, district courts will often use fact-based procedures to hold hearings, to look at the expert testimony. There's a lot of expert testimony in this case, as you all saw. We have Professor Oftenoma's reports, two of them, the second and third, they have Professor Stefan. Reading Russian law cases is not the same as, you know, ye olde England. So I can see reasons why this court would do that. Let me give one reason, however, it would be that this court could easily decide their Russian law issues. Otherwise, I'm happy to argue. And will this reason treat with AP? Yes. Okay. Indeed it does, Your Honor. Indeed it does. And that's 2020 clarification. And we believe that resolution AP was misinterpreted, obviously by Yukos Capital and also by, you know, some of the other courts that heard it. Resolution AP concerned a statute on a tariff. A tariff is set by the, actually concerned a case on a, on a tariff, not a statute. Tariffs are not set by statute. So it was set by the government. All resolution AP decided was because that treaty affected the rights of people, right, by increasing the tariffs. It was similar to a ratified treaty. And because ratified treaties had to be published, because they have the same concept, you're entitled to know the law. They held by implication, that's the words in AP, by implication, therefore, a treaty which applied provisionally had to be published as well. That, there was not even a statute at issue in AP. And therefore, it never discussed whether an unratified treaty could overrule a statute. And of course, that would make no sense, because what reason would there be for the Russian constitution to require ratification? Article 15.4, why would Russia have two statutes? The USSR flit, foreign law of investment treaties, which we believe governed or the 1995 flit, which both require ratification for treaties, which overrule statutes. That's the role of their legislature. They have the same concept of separation of powers, right, that we have in this country. The 2020 clarification, your honor, dealt with the fact that there were courts outside of which misinterpreted AP. It's straightforward. When you look at the 2020 clarification, one issue was the tribunal in this case, two to one, misinterpreted AP, and the other were the Dutch courts, which are not at issue here. We're dealing with Yukos capital, the Swiss case. In the Russian constitutional court, pursuant to its procedures, was allowed to clarify AP. And what the Russian constitution court in the 2020 clarification did at the request of the government, and also the participant in the underlying... 2020? 2020 clarification. That's the Christmas opinion? Well, that wasn't Christmas in Russia, but yes, your honor. Listen, we have, you know, that's what the other side, maybe without great respect, calls the 2020 clarification. Sorry, I didn't realize that. Right. Yeah. Okay. But we're talking about the same opinion that is clarifying AP. Yes. Yes, it is. And there was some imprecise language in AP. And again, that decision did not deal with a statute. So that decision would... We would have to apply the normally existing standards about whether to give effect to the Christmas decision, right? And there's an argument that's being made on the other side, that if you apply the normal standards to decide whether you give effect to a decision like that, they point in the other direction, that you wouldn't give effect to it. What's your response to that is? And I'm happy to respond to it as long as I can call it the 2020 clarification. Yeah. The answer is we're familiar with Hilton. We're familiar with animal science. And they make two type of attacks on the 2020 clarification, or at least really one. They attack the integrity of the judges in the constitutional court who made that decision. Our view is that that type of attack on those judges in this court doesn't belong any more than, unfortunately, the attacks on some of the judges in this courthouse. They attack their impartiality. They claim that the decision was politically influenced, okay? I'm sorry, Judge. Just specifically, the claim is not necessarily directly on the judges, but that at the request of the Putin administration, the legislature stripped the justices of their tenure protections, which in our system is meant to make you more responsive to the political wishes of the leader if you don't have tenure protection. Your Honor, what they said isn't exactly correct. There were amendments to the statute that authorizes the constitutional court. They got it partly wrong. Many of these amendments were in place for a long time. There were some changes in the way that the tenure system worked. However, what was never changed is that in order to remove a judge from the constitutional court, that removal has to be approved by the legislature. So it's no different here than in this country that if you're going to impeach a judge that the Senate, okay, the legislature would have to rule on it. So the judges, Your Honor, were fully protected. And again, Your Honor, they did make the, I do think there's an attack on the integrity because they did say they were subject to political influence, okay? Your Honor, so what they're doing in a way, I think, is they're attacking the integrity of the Russian courts. Some of that, in my view, and it's in our brief, is fact-based. If you're attacking the integrity of a court system, if you're attacking its adequacy, we have a lot of cases, you know, in the area of foreign non-convence. And we know that this court, in reviewing what the district court did in terms of the adequacy of a foreign system in the air crash over South India case, recognized that that review is subject to an abuse of discretion standard. So what I'm suggesting, Judge Wilkins, if this court is going to give credence, and we don't think that their allegations go to the level of giving credence, but if this court, and again, the district court never decided it. So you're absolutely right, even if you don't give credence to it, I suppose, that you would be, that this court could, and I submit, should remand. Don't give credence to which? Their allegations of influence. They've made those allegations. They also point to something about the request for reconsideration, whether it's secret or not secret. Do you have a response to that? Do you know what I'm referring to? I do, Your Honor. And the reality, judicial systems are not in aqueous simply because they're different. There's a lot, in the Russian Constitutional Court, those proceedings, the proceedings are not public. Okay. I could tell you in this case, the district court's decision, denier motion to dismiss was not public because he didn't have a hearing. So I don't think that it's uncommon in other judicial systems that hearings are not public. It was not ex-party, Judge. The parties that were notified of the case were obviously the Russian government that brought it, but also the original claimant in the, in the, in the tariff treaty case. Now, if Your Honor's going to say to me, well, he had no dog in the fight, I'm going to tell Your Honor, that's correct. So in that, in that way, I'm not suggesting that it was a fully adversarial proceeding, but sometimes that you have cases, you know, where a court will clarify a decision and the other side isn't affected by it and the court goes ahead and does it. And that actually, Judge Pillard, happened in this case. For some reason, the district court ruled on an original objection to service because it was originally served on our embassy. The Russian Federation's position is the same as the United States' position. You can't serve embassies. You have to serve the State Department or you have, in our case, the Ministry of Foreign Affairs in Russia. They eventually served the Ministry of Foreign Affairs and we withdrew our objection for reasons we don't, on the record, for reasons I don't understand, the district court went ahead and ruled on that and said you could serve embassies. I went into a distraction, but my, my, my point is that some things, sometimes things are not contested. I have one quick question about the 2020 and then, and then we'll, I know I've taken my time. We'll give you a little bit of time for rebuttal. Thank you, sir, Judge. I have one quick question about the 2020, which is, am I right? And you may have covered this, but I missed it. My understanding is that there were amendments to the rules that, by which the proceedings would have been more transparent and public, but then in advance of this one, it was changed so that they weren't that much, right? Or is that? It's partially right, Your Honor. There were amendments so that they would not, so that going forward, there were, there were not public hearings in the constitutional court. In the past, the way that it worked is if there was a public hearing and then there was an, there was a, a, a, an effort to clarify that decision, the, the, the, the clarification process would be the same as the prior one. If there was a hearing, then the clarification process would be public. If there had been no original hearing, then it, then it, then it wouldn't be, then it wouldn't be public. So that, so, so that there was a, there, there I appreciate the extra, maybe the extra time. Yucca's capital was never a party to the 2012 HP in the first place. It would have never had standing to participate in the clarification. And then my only point, Judge Wilkins, we, we, we would support remand in this case, but in particular, if there was concern about the adequacy of the Russian courts, we believe that that's clearly an issue for the district court to decide in its own discretion in the first instance. Thank you very much. We'll give you a little time for a while. Thank you, counsel. Thank you. Thank you, Your Honor. May it please the court, Matthew Rosen for APLE Yucca's capital. Russia had a full and fair opportunity to litigate its provisional application arguments in the Swiss Supreme Court in the country that it agreed to as the seat of arbitration. The Swiss Supreme Court rejected all of Russia's arguments in a thoughtful, well-reasoned opinion. That decision is binding and it's also correct. Swiss law itself doesn't even recognize collateral estoppel, does it? Well, it, when applying principles of collateral estoppel in comedy to a foreign court system, we have to be very careful because court systems, you know, the Hilton decision recognizes that comedy applies to a wide range of legal systems. It talks about Russia, it talks about civil court systems. And the concepts do not necessarily apply identically, but there are ways in which the Swiss court system achieves finality and it is that finality that is entitled to respect. My friend on the other side, in their briefs, in their third expert report, they acknowledge that having litigated this issue of provisional application before the Swiss Supreme Court in a set-aside proceeding, Russia could not contest provisional application as a basis to oppose enforcement. Now, they say that's because of procedural rules, it's not because of issue preclusion or res judicata, but at the end of the day, the Swiss system is achieving finality. And those same principles, so this court would be giving- Even the way you just described it, it didn't even sound like you're relying on issue preclusion. Are you actually relying on the doctrine of issue preclusion or are you saying there's something that's kind of close to issue preclusion given Judge Pillard's question about the actual effect of the Swiss resolution under the Swiss understanding itself? The way that I would look at it is that, and the U.S. brief looks at it this way as well, you apply U.S. principles of issue preclusion. That makes sense because we're dealing with decisions of foreign courts and it would be burdensome and contrary to the principles, the efficiencies achieved by issue preclusion, to have to kind of go into each foreign court's law to figure out exactly how their doctrines map onto ours. But we would not dispute that there is some role for foreign law to play when a- If a foreign court were to say, look, the nature of this decision was too tentative, we wouldn't follow it, it's not final, it could be re-litigated in a similar type of proceeding. That would be an exception, perhaps, to the U.S. doctrine of issue preclusion, but we're relying on the U.S. doctrine of issue preclusion and we're relying on the fact that this issue could not be re-litigated in the Swiss court system in the same context. The U.S. brief makes clear that there's no barrier to applying issue preclusion in the context of an issue that arises in foreign sovereign immunity, and all of the requirements for issue preclusion and comity are met here. The Swiss court is a notoriously neutral court. The procedures here were completely regular. Russia chose, agreed to Switzerland being the seat of arbitration, and they chose to submit this question to the Swiss Supreme Court. In my view, the arbitration exception is really the first ground to consider. It's just more well-trod by precedence of our court, and Russia relies on the 2020 decision to say that Russian law prohibits provisional application of a treaty for investor state arbitration, and your primary response is that that 2020 decision is unreliable, but you also argue that it's irrelevant to assessing the existence of Russia's agreement to arbitrate at the time of Yukos's arbitration against Russia. Why is that the time period for these purposes when the arbitration took place? It's the time period both under international law and under the Foreign Sovereign Immunities Act. International law is well-established. We cite several well-settled authorities that recognize that for purposes of international arbitration, you view the jurisdiction of the FSA as well, because the FSA doesn't say there has to be an agreement at the time of the court proceeding. It says that the award has to be issued pursuant to the appropriate type of agreement, and so if the agreement existed at the start of the arbitration and the arbitral tribunal relied on that existence of the agreement at that time in issuing the award, that's all you need for purposes of the FSA. I'll also point out that the issue preclusion argument resolves their reliance on the constitutional court. The Swiss court, if you look at the bottom of page 750 and the top of 751 of the appendix, addresses the merits of the 2020 constitutional court decision, and it said Russia has failed to establish that that decision actually represents the law of Russia at the relevant time, as opposed to a revision of Russian law after the fact. But even if you want to reach it on the merits, I think the conclusion is the same, and it is not entirely based on the fact that this is a suspicious, procedurally irregular decision, although that is certainly true. But even without that, the Supreme Court has said in the analogous context of evaluating a state court's ruling on state law, that courts temper their deference to state court decisions on state law when there's a higher order norm that would be undermined by drawing deference. And so in the state context, that's the U.S. Constitution. In the elections context, in the contracts clause context, and in the takings clause context, there are circumstances where the federal Supreme Court, federal courts will second-guess state courts on issues of state law, because if they didn't, states could easily defeat their constitutional obligations. And that is exactly the circumstance here. That's by analogy. By analogy. But I think Russia concedes the analogy. They themselves invoke an analogy to state court. That's the analogy that's drawn in Elmendorf v. Taylor 200 years ago, animal science products more recently. So I think the analogy stands. And it also makes sense for purposes of the Energy Charter Treaty. The provisional application provision of the Energy Charter Treaty would be a nullity. If all you needed as a foreign state, having provisionally agreed to apply a treaty, to have your court system, after the fact, after you've already lost more than $55 billion of arbitral awards, come in and say, actually, this is contrary to our law. No country would ever be bound provisionally by the Energy Charter Treaty if you adopt the level of deference that Russia advocates. Further, even if you don't think the proceeding was corrupt, it does not meet the requirements for comedy under Hilton, because the parties here didn't get to participate. There was, Russia acknowledges, there was no adversary in the proceeding. An adversary who had no interest in the case was invited. The investors whose interests are at stake did not get to appear. You layer on top of that... They weren't the only party whose interests were at stake. I mean, any number of parties going forward would be affected, identifiable or not. Well, I don't think it's true that any, that parties would be affected going forward. And that's part of the reason that the decision is suspicious. Because by 2020, Russia had withdrawn from provisional applications. By 2020, after it's only where you have this kind of straddle. And is this the only case? Or I guess there's at least a finite universe of cases that were arbitrated before and then... Right. ...are legally subject. Yeah. And there's no real prospect of arbitrating ECT disputes after 2020, because Russia is... Aren't other cases in Yukos's category? There's the Hulley case. Hulley, right. But the Hulley case is what, in fact, what motivated the decision, right? Hulley didn't participate either. And the timing makes it very clear that this was about getting out of the Hulley award and this award. Because Russia had just lost in the Dutch Court of Appeals. And you're saying that's basically the universe of like cases. I think there might be a third award, but there are certainly... They were certainly not issuing this opinion to clarify Russian law going forward. They were issuing this opinion and they specifically addressed the ECT, even though it had been... They've been withdrawn from provisional application 11 years earlier. They specifically addressed the ECT because the conceded purpose of this decision was to get out of the Dutch court's decision. They told the Dutch court that. So there's really no dispute that you have a fox guarding the hen house here if you let the Russian court... When you say conceded purpose, what exactly are you referring to? I don't have the site handy, but it's in our brief. They told the Dutch, I believe it was the Dutch Supreme Court, that the reason they were seeking clarification of this decision was because they believed that the Dutch Court of Appeals had erred. So it was precisely because they were in a proceeding to enforce a 50 billion dollar arbitral award against them. They didn't like the outcome. So they decided that they would have their court reconsider the question. And if that's not... If that's all you need to do to get out of an ECT award, you would never have really binding provisional application. And if I may, there's no basis for any of the reasoning in the Constitution. I mean, you got to win on getting the resolution that you want from the court, right? I mean, it's not just that you open it up, you actually have to prevail in your interpretation. If you don't follow the 2020 decision, we still have to win on Russian law. I'm happy to walk through the authorities my friend on the other side cited. None of them provide any basis for their argument. I'll start with their premise that treaties that contradict... The treaties that require ratification cannot be applied provisionally. Well, no one disputes that the ECT is subject to ratification. It says that on its face. It also says it applies provisionally. These concepts are compatible. And the Russian Supreme Court recognized that in its 2014 decision 6P, where it held that a treaty that required ratification was subject to provisional application. It upheld provisional application for that treaty. So the fact that the treaty has to be ratified does not mean it can't be applied provisionally pending ratification. I'll point to Arbitrage Procedural Code 198-3, which they rely on to say that Russian law requires certain kind of public disputes to be litigated in a certain Russian court. But that provision is expressly subject to an exception. It says, unless another statute provides otherwise. And there is another statute here. That other statute is the 1999 foreign investment statute that expressly provides that when a treaty provides for arbitration of investment disputes, then you can arbitrate those investment disputes. So there's no contradiction of Russian law in allowing for provisional application of a treaty that provides for arbitration. Further, even if there was a contradiction, Russian law provides that provisionally applied treaties supersede contradictory statutes. And for that, let me walk you through a couple different authorities that make that clear. We start with the Vienna Convention, which was codified as a statute in Russia even before its constitution was adopted. Yeah, I think this part of your argument has been understood in other courts too. Absolutely. Yeah, the Dutch Court of Appeals decision is crystal clear on this. The Swiss Court decision recognizes that, well, all you have to do to get out of their authorities is just follow the analysis in those decisions. Let me make sure my colleagues don't have additional questions at this point. If you have a final point you want to wrap up with, that's fine, but otherwise... No, if that's all your questions, I would ask the court to affirm the decision. Okay. Thank you. Thank you, counsel. Your Honor... We'll give you the two minutes that you asked for, for rebuttal. Yes. Number one, we believe the issue of preclusion should be remanded. I don't think there was a square answer on the Swiss issue, but we've already argued that. Number two, Your Honor, some of what he said about the 2020 for clarification is just simply wrong. Okay. The Russia withdrew from the ECT in 2009. Okay. It's a 20-year window, okay, for investments that were made in Russia at that point. So until 2029, these type of claims can be made, and I would suggest, Your Honor, there's a real risk that they may be made in the future because of the dispute between Russia and Ukraine. This court has already dealt with some of those disputes, albeit under a of the cases that have already been decided, but because of the cases that might be decided in the future. So that's number two. The analysis here is one that would be decided under Hilton and Animal Science. The U.S. case in the U.S. Constitution and the states, that is a completely different issue. The U.S. Constitution is not an issue. In our case, this court would apply Hilton and Animal Science. Three, there was another point that he made, but my point is the 1990, Phil, you can take a look at that. That's the foreign investment law. They said on page 34-35, in a footnote in their opposition brief, they said that statute is just a pass-through statute. It says that you can allow arbitration, but in order to allow arbitration, it has to be authorized by ratified, either by a statute or a treaty which is ratified by a statute. Let me just conclude. They have not cited a single case in Russia which said that an unratified treaty could override a statute. They have not cited a single case in Russia that said that an unratified treaty could change the jurisdiction of courts. Here, the arbitrage court, 1898-3, is exclusive jurisdiction unless a ratified treaty changes that. They have not cited a single case where a provisionally applied treaty could override a statute in any context. I have cited two cases today where the Supreme Arbitrage Court actually vacated arbitration awards because they said that was contrary to Russian law. I want to thank the court for the generous time that you've given me. I have three attorneys here in my firm, Maria Gretchiskina, Timur Zabudin, and Polina Izmulevna, who are in this court for the first time today. All of them are American attorneys. They're originally from Russia, and we very much appreciate the opportunity that you've given to us to present ourselves today. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Pillard; Wilkins